**PLATORO LIMITED, INC., an Indiana corporation, as Salvor,**

v.

**The UNIDENTIFIED REMAINS OF A VESSEL, her cargo, apparel, tackle and furniture, In a Cause of Salvage, Civil and Maritime.**

**Civ. A. No. 69–B–86.**

United States District Court,
S. D. Texas,
Brownsville Division.

June 12, 1970.

Hardy & Sharpe, Brownsville, Tex., for plaintiff.

Crawford C. Martin, Atty. Gen., of Texas and Nola White, First Asst. Atty. Gen., of Texas, Austin, Tex., Gilbert T. Adams, Sp. Asst. Atty. Gen., of Texas, Beaumont, Tex., and M. L. Cook, Sp. Asst. Atty. Gen., of Texas, Houston, Tex., for the State of Texas.

Frances Tarlton Farenthold and Roger Butler, Corpus Christi, Tex., for Robert D. Bluntzer, Sr. and Henry H. Hildebrand, Relators in Cause No. 81, in the District Court of Kennedy County, Texas, who have filed an amicus curiae brief with leave of Court.

## MEMORANDUM AND ORDER

GARZA, District Judge.

The Plaintiff, Platoro Limited, Inc., an Indiana corporation, is attempting by this action in admiralty to establish its claim as Salvor to the remains of a vessel and certain goods belonging to the vessel, which were recovered by it off the Texas coast in the Gulf of Mexico, at a point east of where the Port Mansfield channel intersects historical Padre Island.

The vessel and its cargo involved in this salvage claim are the remains of an old Spanish galleon that sank on or near the shores of Padre Island, some four hundred and fifty years ago and apparently belonged to the Spanish government. The writer has heard many stories of Spanish galleons that were sunk during hurricanes off the coast of Padre Island, since his childhood, and has often heard stories of Spanish coins having been found on the beaches of Padre Island. Apparently the Plaintiff heard the same stories and began searching for the remains of said sunken Spanish ships. The articles salvaged, and which are the subject matter of this salvage claim, were found by the Plaintiff around the first days of September, 1967, from thirty to forty feet under the surface of the navigable waters of the Gulf of Mexico, with said goods being buried in the ocean floor in ten to fifteen feet of sand.

The Plaintiff has alleged, and it has been admitted, that it began its salvage operation at the site heretofore described on or about the 11th day of September, 1967, and continued to work on the abandoned and wrecked goods until December 13, 1967. Also alleged is that the United States Coast Guard was at all times apprised of the nature of the

salvage operation being conducted. On December 13, 1967, the State of Texas applied for a temporary restraining order in the 28th Judicial District Court of Kennedy County, Texas, in Cause No. 81, restraining the Plaintiff and others from engaging in the salvage operation. The Plaintiff here filed its special appearance in said cause in the State Court on January 5, 1968, preserving the legal question relating to exclusive jurisdiction of the Admiralty Courts of the United States to determine controversies relating to salvage claims. No action apparently has been taken in the State Court to determine title to the goods in question.

When the Plaintiff filed its complaint in this law suit on August 6, 1969, because of the pendency of said State suit, notice was given to the State of Texas, although in all other respects it proceeded in its salvage claim by the issuance of a monition. After the State of Texas had requested additional time in which to file pleadings in this Court, on October 17th, the State of Texas filed its plea of immunity from suit and original answer, asking that this suit be dismissed for want of jurisdiction.

A hearing was held by this Court on January 17, 1970, on the State of Texas' motion to dismiss on its plea of immunity.

The Court, on its own motion, raised the question of whether or not this action was, in truth and in fact, a salvage claim. For in this Court's opinion, if this action be a true salvage claim, the suit would be against the items salvaged and the State of Texas could only appear as a claimant. The parties were given thirty days in which to file briefs on this question. Two thirty day extensions were granted for the filing of the briefs, the last brief having been filed on April 6th.

If this be a true salvage claim, this Court, and this Court only, has jurisdiction to dispose of the salvage claim. It is an established rule of law

that "the Admiralty Courts have exclusive jurisdiction in cases of salvage on navigable waters for which a salvage award, based on the elements of a salvage service, is sought". Norris, The Law of Salvage, page 18. Chief Justice Taney in Houseman v. The Cargo of the Schooner North Carolina, 40 U.S. 40, 10 L.Ed. 653, deciding the question of whether or not the matter in controversy in that case came within the jurisdiction of the Court of Admiralty stated the following:

> "The points in controversy are, whether salvage is due, and if due, how much? Upon such questions, there can be no doubt of the jurisdiction of a Court of Admiralty, nor of its authority to proceed in rem, and attach the property detained. The Admiralty is the only Court where such a question can be tried; for what other Court, but a Court of Admiralty, has jurisdiction to try a question of salvage?"

The State of Texas contends that the salvage operations conducted by the Plaintiff, and which are not disputed, was not a salvage operation embracing the essential ingredient of "impending peril of the sea"; that the salvaged goods were in actuality not a "subject of salvage"; that the action of petitioners constituted nothing more than exploration of the State's subsoil without authority and without a permit required by the Penal Code, Article 147b, Vernon's Ann.Tex.St. and in violation of law, and that the acts of the Plaintiff were as illegal as if they had gone on private owned lands and by using heavy hydraulic equipment explored the subsoil; and that the subject matter of the suit is presently in custodia legis of the 28th Judicial District Court of the State of Texas.

That the subject matter of the salvage claim in this suit were parts of a vessel and its cargo cannot be disputed. That the vessel and its cargo had been abandoned by its owners at the time of its demise cannot be disputed either.

That the vessel and its cargo, parts of which constitute the salvage claim of the Plaintiff, were in a submerged state in lands belonging to the State of Texas is also without dispute. The Submerged Lands Act, Title 43, United States Code, Section 1311(b)(1), gave the State of Texas the submerged lands in question.

At this point it might be wise to point out that the State of Texas previously had a Wreck-Masters Statute, Articles 8310–8324, Vernon's Annotated Civil Statutes of Texas, but these statutes were repealed by the acts of the 53rd Texas Legislature in 1953, and were no longer in effect during the salvage operations of the Plaintiff. The State of Texas, in 1969, passed its Antiquities Code, Article 6145–9, Vernon's Annotated Civil Statutes, which became effective September 10, 1969. It is interesting to note that Section 5 of the Antiquities Code seeks to control what the Plaintiff did in the present case, for Section 5 reads as follows:

> "All sunken or abandoned pre-twentieth century ships and wrecks of the sea and any part or the contents thereof and all treasure imbedded in the earth, located in, on or under the surface of lands belonging to the State of Texas, including its tidelands, submerged lands and the beds of its rivers and the sea within the jurisdiction of the State of Texas are hereby declared to be State Archeological Landmarks and are the sole property of the State of Texas and may not be taken, altered, damaged, destroyed, salvaged or excavated without a contract or permit of the Antiquities Committee."

It is too bad that Texas did not have this Antiquities Code in 1967, for the work of this Court might have been made easier. On the other hand, the lack of such legislation points strongly to the proposition that the acts of the Plaintiff were those of Salvor of an abandoned shipwreck and its cargo.

The Plaintiff here states in their pleading and in their brief, and apparently the claim is not disputed, that the Commissioner of the Land Office of the State of Texas had entered into some kind of contract with them to divide the salvage matters on a fifty-fifty basis, but after the salvage matters were brought to the State of Texas, he denied having such a contract and he said that he had only made such statements to get the Plaintiff to return the salvage articles to Texas. Be that as it may, it is of no importance to the decision of this case. If the subject matter is found to be a true salvage of an abandoned shipwreck and its cargo, the Plaintiff will have the first and only claim on the same, or at least a salvage lien, if nothing else.

The State of Texas contends that the activities of the petitioner constituted a trespass on State land and was in violation of several statutes of the State. They first state that the Plaintiff was in violation of Article 147b of the Penal Code of the State of Texas. After a close reading of this statute, I hold it does not apply to the operations of the Plaintiff. They also point out to the Court Article 5415e, Article 5421 and Article 5251, of the Revised Civil Statutes of Texas. These statutes are concerned with the exploration of State lands for minerals and timber, and I hold that they are not applicable to the operations of the Plaintiff either.

Perhaps the most widely quoted definition of salvage is the one expressed by the Supreme Court in The Sabine, 101 U.S. 384, 25 L.Ed. 982, which held that:

> "Salvage is the compensation allowed to persons by whose voluntary assistance a ship at sea or her cargo or both have been saved in whole or in part from impending sea peril, or in recovering such property from actual peril or loss, as in cases of shipwreck, derelict or recapture.

> "Three elements are necessary to a valid salvage claim:

> (1) A marine peril.

(2) Service voluntarily rendered when not required as an existing duty or for a special contract.

(3) Success in whole or in part, or that the service rendered contributed to such success."

Similar language is to be found in The Clara, 90 U.S. 1, 23 L.Ed. 146 and The Blackwall, 77 U.S. 1, 19 L.Ed. 870. The State of Texas, in its brief, urges strongly that since the old Spanish galleon in question was in no way "in impending peril of the sea", an essential element or ingredient of salvage is missing. They cite to the Court the case of In re American Oil Company, 5 Cir., 417 F.2d 164, and other cases, with which this Court does not disagree.

However, the many salvage cases read by this Court show that the "impending peril" element does not have to be present in cases of shipwreck, derelict or other marine misadventure, and salvage has been allowed where cargo has been recovered from actual loss under these circumstances. In this case, we have recovery from actual loss of items that had been committed to the sea.

A vessel does not have to be recovered whole to have a salvage claim. The recovery of its cargo alone is sufficient to make a claim for salvage.

This Court can find no rule that cuts off a salvage claim because of the time element of the shipwreck, and there certainly is no rational basis for any such rule, for an abandoned shipwreck is an abandoned shipwreck, whether it happened yesterday or five centuries ago. See the case of Rickard v. Pringle, D.C., 293 F.Supp. 981, involving the recovery of a propeller from the vessel "Acara", which had sunk in 1902, and the salvage of the propeller did not occur until some sixty years later.

The fact that the old Spanish galleon was buried in the sand at the bottom of the sea makes no difference either, for it, and its cargo, was still committed to the sea, whether floating on top of the sea, at the bottom of the sea, or lying imbedded under the sea.

I, therefore, find that this is a true salvage claim and that this Court, and this Court only, has jurisdiction over the claim for salvage made by the Plaintiff in this case. I find, also, that the subject of this claim is in custodia legis of the 28th Judicial District Court of the State of Texas, and in aid of the jurisdiction of this Court, I enjoin the Honorable 28th Judicial District Court of the State of Texas from disposing of the salvage matter made the basis of this cause of action, until further orders of this Court. I take this action under Title 28, United States Code, § 2283, and Title 28, United States Code, § 1651(a).

What this Court holds here is of no earth-shaking consequence, for the problem before the Court will never arise again, in view of the passage by the Legislature of the State of Texas of its Antiquities Code cited above.

This Court believes that the intervention of the State of Texas in this cause amounts to a claim on the salvage, so there remains the question of how much salvage the Plaintiff is due, and a hearing on this matter will be set later.

This Court certifies that it is of the opinion that this Order involves a controlling question of law as to which there is substantial ground for a difference of opinion, and that an immediate appeal from this Order may materially advance the ultimate termination of this litigation and makes the findings necessary under 28 U.S.C. § 1292(b) for the State of Texas to seek an immediate appeal of this Interlocutory Order.

The Clerk will send copies of this Memorandum and Order to all counsel for the parties and to the Honorable 28th Judicial District Court of the State of Texas, Sarita, Kennedy County, Texas.