508 F.2d 1113
 PLATORO LIMITED, INC., Plaintiff-Appellee-Cross-Appellant,
v.
The UNIDENTIFIED REMAINS OF A VESSEL, her cargo, etc.,
Defendants, State of Texas,
Movant-Appellant-Cross-Appellee,
Jefferson T. Burke and Billy
Russell Algoe,
Intervenors-
Appellees.
 No. 74-1540.
 United States Court of Appeals, Fifth Circuit.
 Feb. 27, 1975.
 
 John L. Hill, Atty. Gen. of Tex., Larry F. York, First Asst. Atty. Gen., Elizabeth Levatino, Austin, Tex., for movant-appellant.
 Thomas G. Sharpe, Jr., Brownsville, Tex., for Platoro Limited.
 Roger Butler, Robston, tex., Gordon L. Briscoe, Harlingen, Tex., Eduardo Roberto Rodriguez, Brownsville, Tex., for Jefferson T. Burke, and others.
 Appeals from the United States District Court for the Southern District of Texas.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 In 1555 several Spanish vessels sank off the coast of Padre Island, Texas, in the Gulf of Mexico during a hurricane. The wreckage remained there practically undisturbed until September 9, 1967.[1] On that date Platoro Limited, Inc., an Indiana corporation, began operations to recover the remains of the vessels. Platoro successfully located some artifacts, and, as the items were recovered, it shipped them to Gary, Indiana. Recovery operations took place from September until December 13, 1967, when the 28th Judicial District Court for the State of Texas issued a temporary restraining order prohibiting Platoro from conducting further salvage operations. The State of Texas had instituted the state court suit under former 147a & 147b of the Texas Penal Code.[2]
 
 
 2
 Shortly after the state court suit was filed, Jerry Sadler, then the Texas Land Commissioner, opened negotiations with Platoro regarding the recovered items. After considerable negotiation, Platoro and Sadler agreed to a contract dividing the articles already recovered, and arranging for continued exploration of the Padre Island area. An officer of Platoro signed the contract, but no representative of the State of Texas ever did. Pursuant to the negotiations, Platoro returned the recovered items to Austin, texas, where they were held by the General Land Office. In September 1969, the state judicial district court ordered the items transferred to the Texas Archaeological Research Library, also located in Austin.
 
 
 3
 On August 6, 1969 Platoro filed an in rem suit in the federal district court for the Southern District of Texas. Platoro's complaint sought a declaration that title to the recovered items was vested in Platoro, or alternatively a salvage award for the recovery operations. The State of Texas appeared in the district court, filing a plea of immunity from suit and requesting dismissal for lack of jurisdiction. The district court refused to dismiss the suit, and enjoined the state district court from disposing of the res. After a hearing, the court ruled that Platoro was entitled to a salvage award for its actions in recovering the items. In its memorandum and order of December 26, 1973, the district court held that (1) the district court had in rem jurisdiction and subject matter jurisdiction over Platoro's claim; (2) that Texas had title to the artifacts; (3) and Platoro should receive a salvage award of $131,248.00. The State of Texas appeals the district court's judgment on several grounds: (1) lack of in rem jurisdiction; (2) lack of subject matter jurisdiction since (a) Texas did not waive sovereign immunity, and (b) no maritime peril existed; and (3) improper computation of the salvage award. We reverse on the in rem jurisdiction point, and therefore find it unnecessary to consider the other claims.[3]
 
 
 4
 To establish in rem jurisdiction in admiralty the res must be present in the district when the suit is filed or during the pendency of the action. Rule C(2), Supplemental Rules for Certain Admiralty and Maritime Claims provides: 'In actions in rem the complaint . . . shall describe with reasonable particularity the property that is the subject of the action and state that it is within the district or will be during the pendency of the action.' Rule E(3)(a) of the Supplemental Rules states: 'Process in rem and of maritime attachment and garnishment shall be served only within the district.' The fact that the artifacts originally lay within the Southern District does not establish in rem jurisdiction. See American Bank of Wage Claims v. Registry of District Court, 431 F.2d 1215 (9th Cir. 1970). Platoro itself removed the artifacts from the Southern District of Texas long before filing the suit there, and, when the monition issued the artifacts were in the Western District of Texas.
 
 
 5
 In its jurisdictional ruling, the district court acknowledged that the artifacts were not within the Southern District. It felt, however, that this case fell within exception to the general rule that removal of the res destroys a court's jurisdictional base. Where the res is accidentally, fraudulently, or improperly removed from the district, the court's in rem jurisdiction is not destroyed. The Rio Grande, 90 U.S. (23 Wall.) 458, 23 L.Ed. 158 (1874); American Bank of Wage Claims v. Registry of District Court,supra; Martin v. The Bud, 172 F.2d 295 (9th Cir. 1949). The exception cannot apply, however, where the district court did not originally establish its in rem jurisdiction. Furthermore, Platoro was the party who removed the artifacts from the Southern District. The fraud, if any, occurred in effecting removal of the artifacts from Gary, Indiana to Austin, Texas.
 
 
 6
 The district court relied on an alternative theory to establish its jurisdiction. In December 1967, the State of Texas sued Platoro in state court to enjoin the recovery operations. The court below reasoned that the state district court's assumption of jurisdiction over Texas and Platoro, gave the federal court the requisite jurisdictional base. We cannot divine the basis for the district court's conclusion. The basis for the state court's assertion of jurisdiction is unclear, but it does not appear that the state court had in rem jurisdiction of the artifacts that are the subject of this suit. When Texas filed its state court action, Platoro had already removed those items to Gary, Indiana. Further, the state voluntarily dismissed the state court suit before the federal suit went to trial. The district judge below specifically found that the dismissal was in good faith, and not an attempt to destroy the federal court's jurisdiction. Thus the basis for the district court's novel custodia legis theory was removed by the trial date.
 
 
 7
 The res in question was not actually or constructively present in the Southern District of Texas when Platoro filed suit. The service of process by publication did not operate to establish in rem jurisdiction since Platoro had previously removed the artifacts. Therefore we reverse and remand this cause to the district court with directions to dismiss for lack of jurisdiction.
 
 
 
 [1]
 The artifacts came to rest on the clay bottom of the Gulf of Mexico, thirty to forty feet underwater. Eventually they were covered by four to ten feet of sand. Under these conditions, the items were effectively impervious to weather conditions above the surface of the sea, and the sand prevented deterioration underwater. The items remained in this state of equilibrium until 1967 when Platoro commenced recovery operations
 
 
 [2]
 Tex.Laws 1931, 42d Leg., 1st C.S., ch. 32 at 71; Tex.Laws 1939, 46th Leg. at 60
 
 
 [3]
 The parties did not extensively brief or argue the sovereign immunity question. We feel compelled to point out, however, that this proceeding raises serious Eleventh Amendment questions. That Amendment provides: 'The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' U.S.Const. Amend. XI. Though the language of the Amendment is narrow, the Supreme Court has construed the provision broadly. See Ford Motor Co. v. Department of Treasury, 323 U.s. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1959); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). Thus there are Eleventh Amendment considerations in an admiralty suit as well as a 'suit in law or equity.' In re New York, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Intracoastal Transp., Inc. v. Decatur Cty., Georgia, 482 F.2d 361 (5th Cir. 1973). See also Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974)