695 F.2d 893
 1984 A.M.C. 2288
 PLATORO LIMITED, INC., Plaintiff-Appellee,
Jefferson T. Burke and Billy Russell Algoe, Intervenors-Appellees,
v.
The UNIDENTIFIED REMAINS OF A VESSEL, HER CARGO, APPAREL,
TACKLE, AND FURNITURE, IN A CAUSE OF SALVAGE,
CIVIL AND MARITIME, Defendant,
State of Texas, Claimant-Appellant.
 No. 81-1257.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 20, 1983.
 
 Connie Ode, Asst. Atty. Gen., Austin, Tex., James F. Parker, San Antonio, Tex., for claimant-appellant.
 Joseph W. McKnight, Dallas, Tex., for amicus curiae Advisory Council on Underwater Archaeology, et al.
 O'Leary, Sanchez & Benton, John Donald Sanchez, Dennis Sanchez, Brownsville, Tex., for plaintiff-appellee.
 Gordon L. Brisco, Harlingen, Tex., for Burke and Algoe.
 Appeals from the United States District Court for the Western District of Texas.
 Before BROWN, WISDOM and RANDALL, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 This case arises out of a dispute between the State of Texas and Platoro, Ltd., a corporation organized to find and recover treasure from ancient shipwrecks, over the results of a successful operation by Platoro. The two parties have been in litigation over this operation since the late 1960s, and this appeal marks their third appearance in this court. We are unfortunately unable to put an end to the controversy here: while we affirm in part the district court's judgment for Platoro, we must remand the case for recalculation of the proper award.I. FACTUAL AND PROCEDURAL BACKGROUND.
 
 
 2
 This case has a long and complex history. In 1555, the Spanish galleon Espiritu Santo sank in a storm. The ship was lost beneath the sea for over four centuries, until the plaintiff, Platoro, located it in 1967. Platoro recovered various items from the wreck and removed them to Indiana, Platoro's home state.
 
 
 3
 The State of Texas applied to a state court for and received a temporary restraining order preventing Platoro from continuing its recovery activities. Negotiations ensued, and Platoro believed that an agreement was reached to divide the recovered items equally between it and Texas. In this belief, Platoro sent the items to Texas, and the State took steps to clean and preserve them.
 
 
 4
 It became clear, however, that Texas did not believe it was bound by the agreement. Platoro then brought an in rem suit in federal court against the vessel, claiming the compensation due a salvor. The suit was in the Southern District of Texas, which included the site of the wreck. The district court ruled that Platoro was entitled to a salvage award. Platoro, Ltd. v. Unidentified Remains of a Vessel, 371 F.Supp. 351 (S.D.Tex.1970). The Fifth Circuit reversed and remanded the case with instructions to dismiss it, because the items had not been in the Southern District of Texas since their recovery: when Platoro returned them to Texas, the State kept them in Austin, in the Western District. Platoro, Ltd. v. Unidentified Remains of a Vessel, 508 F.2d 1113 (5th Cir.1975) (Platoro I ). The Fifth Circuit also pointed out that, since Texas was asserting ownership rights in the items, there were potential eleventh amendment problems. Id. at 1115 n. 3. Platoro sought an eleventh amendment waiver from the Texas legislature, but did not receive one. In 1976, Platoro sued again, this time in the Western District of Texas. The district court ruled in an unpublished opinion that Texas owned the items and Platoro's salvage claim was therefore barred by the eleventh amendment.
 
 
 5
 Platoro did not appeal; instead, it returned to the Texas legislature, from which it received a resolution of waiver.[1] Platoro then filed this suit, only to have the district court dismiss it on the ground that the statute of limitations had run. Platoro appealed to this court, which held that the running of the statute was tolled and remanded the case for trial. Platoro, Ltd. v. Unidentified Remains of a Vessel, 614 F.2d 1051 (5th Cir.1980) (Platoro II ).
 
 
 6
 On remand, the district court, 518 F.Supp. 816, held that Platoro's salvage services should be recompensed, and that their value was at least equal to that of the res. The district court therefore ordered that Texas either surrender the artifacts to Platoro or auction them and give Platoro all auction proceeds. The court also awarded attorneys' fees to Platoro.[2]
 
 
 7
 What is before this court now is Texas' appeal from that judgment. Texas raises several arguments but they fall into four basic categories. The first is that the legislature's resolution of waiver only authorized suit in state court, and thus the eleventh amendment still bars this action. The second category consists of allegations that the proper predicate for making a salvage award did not exist. Third, Texas contests the nature and amount of the salvage award. Finally, it has various objections to the award of attorneys' fees and prejudgment interest.[3] We will discuss each of Texas' claims in turn.II. ELEVENTH AMENDMENT WAIVER.
 
 
 8
 The eleventh amendment prohibits suits in federal court against a state unless the state has consented to the suit. E.g., Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). Platoro does not argue that the eleventh amendment does not apply to this suit; indeed, given Platoro's failure to appeal the district court decision that Texas owned the res and that suit was therefore barred by the eleventh amendment, it is now res judicata that the eleventh amendment applies. The eleventh amendment issue here is raised by Texas: whether the Texas Legislature's resolution waived immunity to suit in federal court or restricted Platoro to an action in state court. It is clear that Texas could put such a restriction on the waiver, Ford Motor Co., supra; Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); the question here is whether it did. We hold that it did not.[4]
 
 
 9
 The resolution passed by the Texas Legislature reads:
 
 
 10
 WHEREAS, Platoro Limited, Incorporated, a foreign corporation authorized to transact business in the State of Texas, alleges that it recovered the remains of a vessel and its cargo, tackle, and furniture; and
 
 
 11
 WHEREAS, Platoro Limited, Incorporated, alleges that the State of Texas has taken possession of those remains without compensating Platoro Limited, Incorporated, for its expense in the salvage operation; now, therefore, be it
 
 
 12
 RESOLVED by the House of Representatives of the State of Texas, the Senate concurring, That Platoro Limited, Incorporated, is hereby granted permission to sue the State of Texas for whatever relief to which it may be entitled as a result of the state's taking possession of these remains; and, be it further
 
 
 13
 RESOLVED, That in the event suit is filed, service of citation and other required process be made on the Attorney General of the State of Texas, and that the suit be tried as other civil suits; and, be it further
 
 
 14
 RESOLVED, That nothing in this resolution may be construed as an admission by the State of Texas, or by any of its employees, agents, departments, agencies, or political subdivisions of liability or of the truth of any allegation asserted by the claimant, but the alleged cause of action must be proved under the laws of this state as in other civil suits; and, be it further
 
 
 15
 RESOLVED, That nothing in this resolution may be construed as a waiver of any defense, of law or fact, available to the State of Texas or to any of its employees, agents, departments, agencies, or political subdivisions, but every defense is specifically reserved.
 
 
 16
 (emphasis added). Texas argues that the italicized portions indicate that the legislature intended to limit Platoro to Texas courts. The State implies this result because: (1) admiralty actions are technically not civil suits; (2) in an in rem action, arrest of the res takes the place of service of process; and (3) an admiralty court would apply federal admiralty law, not "the laws of this state."[5]
 
 
 17
 The Supreme Court has addressed eleventh amendment issues many times. A number of its cases dealt only with whether the suit was one against the state, and therefore concerned merely whether the eleventh amendment applied, not whether it was waived. Many of the waiver cases involve the interpretation of Congressional action to determine either whether it directly abrogated eleventh amendment immunity or whether it conditioned state participation in a program or business on waiver of the eleventh amendment. Insofar as the question in those cases was the intent and power of Congress, they are not controlling here.
 
 
 18
 There are, however, a number of cases dealing with alleged state waivers of the eleventh amendment. In Florida Department of Health & Rehabilitative Services v. Florida Nursing Home Association, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981), the Court reaffirmed its holding in Edelman v. Jordan, 415 U.S. at 673, 94 S.Ct. at 1360-61, that "[i]n deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " (quoting Murray v. Wilson Distilling Co., 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). Both of these cases dealt with state participation in federal programs as an alleged waiver, but the Court's language and citation (in Edelman, 415 U.S. at 673, 94 S.Ct. at 1360) of Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944), a case dealing with a state statute alleged to waive the eleventh amendment, indicate that use of the standard is not restricted to the evaluation of congressional action.
 
 
 19
 Nonetheless, the Supreme Court has never confronted a situation precisely like this. No Supreme Court case has involved a state waiver which was enacted to permit one particular suit alone; in the cases from the Supreme Court and this circuit, the alleged waivers were in statutes of general application, usually state tort claims acts or statutes providing for suits for refund of excess state taxes. See, e.g., Kennecott Copper Corp. v. State Tax Commission, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946) (tax refund statute); Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945) (same); Great Northern Life Insurance Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (same); Chandler v. Dix, 194 U.S. 590, 24 S.Ct. 766, 48 L.Ed. 1129 (1904) (statute authorizing suits to contest validity of sales of land for back taxes); Smith v. Reeves, 178 U.S. 436, 20 S.Ct. 919, 44 L.Ed. 1140 (1900) (tax refund statute); Jagnandan v. Giles, 538 F.2d 1166 (5th Cir.1976), cert. denied, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977) (law creating state university Board of Trustees with capacity to "sue and be sued"); Kiesel v. Florida Department of Natural Resources, 479 F.2d 1261 (5th Cir.1973) (tort claims act); Mifsud v. Palisades Geophysical Institute, Inc., 484 F.Supp. 159 (S.D.Tex.1980) (tort claims act).
 
 
 20
 We note that, even under the rationale of these cases, Texas' argument is weak.[6] The portions of the resolution the State relies on are not designed to specify the substantive law applicable. The provision requiring Platoro to prove its case "under the laws of this state as in other civil suits," when read as a whole, is simply intended to emphasize that Texas is not admitting liability, but merely permitting suit; the point is that the burden of proof still rests on Platoro as in an ordinary suit. We are not persuaded that the legislature meant to invoke the technical distinction between admiralty actions and civil suits. Finally, we do not read the provision for service of process on the Attorney General of Texas as mandatory, thus impliedly excluding an in rem proceeding: it merely directed that any "service of citation and other required process" (emphasis added) be made on the Attorney General, so that Platoro would know whom to serve if personal service were required. In Kiesel v. Florida Department of Natural Resources, supra, an admiralty case, we held that the Florida tort claims act, which made the state subject to suit "in the same manner as a private individual" and thus was not on its face limited to state court, did not become so limited by a further provision that venue of such suits would lie in the county where the cause of action arose. 479 F.2d at 1262. We believe that the alleged restrictions in the Texas resolution similarly do not alter its character as a general waiver.
 
 
 21
 Further, it is reasonable in a case like this, where the waiver is directed only to a single suit and has no clearly expressed limitations, to look beyond the text of the waiver to the circumstances of its enactment. The case for so doing is even stronger where, as here, there had already been litigation on the subject between the parties. Edelman speaks only of looking to the text and the implications to be drawn from it, but Edelman and the other Supreme Court cases deal with statutes of general application. It is less likely to be a state's intent to permit a large class of suits to be brought against it in federal court than to permit a single one, and a waiver for a single suit will clearly be enacted only upon an evaluation by the legislature of the circumstances of that particular suit. We still require that the waiver meet the Edelman test of such "overwhelming implications ... as [will] leave no room for any other reasonable construction," 415 U.S. at 673, 94 S.Ct. at 1361; we merely permit the implications to be drawn from the circumstances as well as the text.
 
 
 22
 In this case, the circumstances indicate that Texas must have intended to permit suit in federal court. There had already been two suits in federal court before the resolution was passed. Both had been suits in admiralty claiming salvage, an area of exclusive federal jurisdiction. M. Norris, The Law of Salvage Sec. 14 (1958 & Supp.1974). Indeed, in the first suit, the Southern District of Texas actually enjoined the state court which apparently then had custody of the artifacts from taking any action with respect to them. Platoro, Ltd. v. Unidentified Remains of a Vessel, 371 F.Supp. 351, 355 (S.D.Tex.1970). This court held in Platoro I that the Southern District had had no jurisdiction, 508 F.2d at 1116, but we did not comment on the propriety of the injunction. The State must then have known that it was possible that a federal court might hold a state-court suit barred.[7] In Platoro I, this court noted the potential eleventh amendment problems. 508 F.2d at 1115 n. 3. Platoro then sought a waiver resolution, which the legislature refused. Platoro filed another suit in federal court; the district court dismissed it on eleventh amendment grounds; and then the legislature passed the resolution in question.
 
 
 23
 Given the facts that the litigation had been entirely in federal court,[8] that at least one district court was willing (properly or improperly) to enjoin state court action, that Platoro's claim has always been in admiralty, and that the legislature changed its mind about the waiver only after there had been a dismissal on eleventh amendment grounds, we believe that the only reasonable construction of the resolution is as a waiver of Texas' eleventh amendment immunity. This suit may therefore be maintained in federal court.
 
 
 24
 III. PREREQUISITES OF SALVAGE CLAIM.
 
 
 25
 Texas argues that, even if it has waived its eleventh amendment immunity, Platoro is still not entitled to a salvage award. The first ground is that Platoro failed to establish "marine peril," one of the elements of a salvage claim; the second is that Texas rejected the salvage services, and that therefore it was improper to make an award.
 
 
 26
 A. Marine Peril.
 
 
 27
 This court addressed the marine peril element of a salvage claim under strikingly similar circumstances in Treasure Salvors, Inc. v. Unidentified Wrecked & Abandoned Sailing Vessel, 569 F.2d 330 (5th Cir.1978), aff'd in part and rev'd in part sub nom. Florida Department of State v. Treasure Salvors, Inc., --- U.S. ----, 102 S.Ct. 3304, 73 L.Ed.2d 1057 (1982) (the Supreme Court did not discuss the salvage issue). In Treasure Salvors, another Spanish galleon had sunk off the Florida coast and remained undisturbed for over three hundred years. The United States argued on appeal that the district court had erroneously made a salvage award in the absence of marine peril. This court held first, that the district court had applied the law of finds, not that of salvage; and second, that the result could alternatively be upheld as a salvage award, because marine peril existed as a matter of law where the ship's location was unknown.[9] Treasure Salvors, 569 F.2d at 336-37. We find no basis for distinguishing Treasure Salvors from the case now before us, and therefore find that there was marine peril.
 
 
 28
 B. Rejection of Salvage Services.
 
 
 29
 A salvage award may be denied if the salvor forces its services on a vessel despite rejection of them by a person with authority over the vessel. The Indian, 159 F. 20, 25 (5th Cir.1908); Norris, supra, Secs. 114-16; see Legnos v. M/V Olga Jacob, 498 F.2d 666, 672 (5th Cir.1974); Fort Myers Shell & Dredging Co. v. The Barge NBC 512, 404 F.2d 137, 139 (5th Cir.1968). In this case, Texas argues that it rejected the salvage services by having two laws that were then on its books: Tex.Penal Code art. 147b(3) (Vernon 1952) (repealed 1969), which required nonresidents to get a permit from the state before engaging in "any exploration or excavation in or on any ... archaeological ... site in Texas ..."; and Tex.Rev.Civ.Stat.Ann. art. 5421 (Vernon 1962) (repealed 1977), which authorized the Attorney General to sue anyone who had "appropriated ... any minerals or other property of value ..." from state lands.[10]
 
 
 30
 We note at the outset that we can find no case where a salvage award was denied because of a constructive rejection of salvage services. The cases involve direct and unequivocal rejection, usually by the master of the distressed ship. See, e.g., The Indian, supra; Norris, supra, Secs. 114-16. At the very least, constructive rejection of salvage services should bar an award only if the rejection must reasonably have been understood by the salvor.
 
 
 31
 Platoro had no reason to understand that its services had been rejected. In the first place, it was far from clear in 1967 that Texas owned the vessel; that was not established until Platoro failed to appeal the 1976 district court decision awarding the res to Texas. Further, even if Platoro should have known that Texas was the owner, which we do not believe it should have, the statutes were not calculated to put Platoro on notice that its services had been rejected. There was nothing in the penal statute to indicate to Platoro that a sunken Spanish galleon was an "archaeological site" within the meaning of the statute.[11] Texas had apparently made no attempt to designate such sites, or indeed even to define them.
 
 
 32
 Similarly, the civil statute in question did not provide adequate notice. It was under the heading "Suits for Minerals and Timber." Further, it did not reject salvage services, for salvage awards are available only when the salvaged property is returned to the owner, not when it is "appropriated." See Norris, supra, Secs. 102-03.
 
 
 33
 We therefore find that there was marine peril and that neither of the statutes that Texas relies upon effectively rejected Platoro's salvage services. Texas raised no other objections that would totally bar any salvage award;[12] we thus move on to consideration of the amount awarded.
 
 
 34
 IV. THE SALVAGE AWARD.
 
 
 35
 The district court, after evaluating the traditional elements by which the amount of a salvage award is determined,[13] held that Platoro was entitled to an award at least equal to the value of the res. The court therefore ordered Texas to surrender the res to Platoro or have it sold by the court, with the entire proceeds, less court costs and costs of sale, to go to Platoro.
 
 
 36
 Texas objects to this award for several reasons. First, it claims that the district court, in making the award, ignored the fact that there were co-salvors who were not before the court and whose shares should rightfully have gone to the owner, not to the suing co-salvor. Second, Texas protests the award of the res itself, and requests that the award be expressed as a number of dollars. Third, the State argues that the award should be diminished to take into account the sums expended by the State in cleaning, preserving, restoring, and cataloging the items.
 
 
 37
 The standard by which we evaluate salvage awards is set out in Compania Galeana, S.A. v. M/V Caribbean Mara, 565 F.2d 358, 360 (5th Cir.1978): "[A]ppellate courts will not disturb a salvage award unless it is based on erroneous principles or a misapprehension of the facts or is so grossly excessive or inadequate as to be deemed an abuse of discretion." Under this standard, we find several problems with the district court's award.
 
 
 38
 A. Co-Salvors.
 
 
 39
 It is undisputed that Platoro performed its salvage services as a joint venturer with two others, William E. Kenon, Jr. and George K. Purvis, and that each joint venturer had a one-third interest in the project. Texas argues that a well-established rule, that the share of a salvage award due to nonsuing co-salvors goes to the owner rather than the suing co-salvors, requires that Platoro's recovery be limited to one-third of the award. Platoro responds that Texas has not raised this point before, and that in any event Platoro was suing as a representative of the joint venture.
 
 
 40
 We find that Platoro was not suing in a representative capacity, since it nowhere raised the point in its pleadings. It is also unclear whether the Texas legislature authorized a representative suit, since the resolution merely permits "Platoro Limited, Incorporated" to sue "for whatever relief to which it may be entitled." (emphasis added).
 
 
 41
 There are no indications of intent to permit a representative suit similar to those which compelled us to find that the resolution permitted a suit in admiralty. Platoro never alleged in the pre-resolution litigation that it was suing as a representative, nor did the earlier opinions focus on the issue. The facts that all the previous litigation had been in admiralty and that the legislature changed its mind about a waiver once there was a definitive eleventh amendment ruling carried great weight in our decision that the waiver applied to a suit in admiralty. There are no similar circumstances indicating intent to permit a representative suit. We therefore find that the waiver does not permit a representative suit, and thus Platoro could not recover for its co-salvors;[14] we also find that Platoro did not in fact sue in a representative capacity.
 
 
 42
 It is a well-established rule of salvage law that, when one co-salvor sues but others do not, the share of the award due to the nonsuing co-salvors goes to the owner, not to the suing co-salvor. The Blackwall, 77 U.S. (10 Wall.) 1, 19 L.Ed. 870 (1869); Norris, supra, Sec. 222. Ordinarily, once a court determines the total salvage award, which takes into account the contributions of both suing and nonsuing co-salvors, its allocation among co-salvors is made according to each co-salvor's contribution to the recovery. The Blackwall, supra; Norris, supra, Secs. 229-30. In this case, however, once the amount due to the joint venture is determined, we see no reason to disturb the arrangement made by the venturers to share equally in the results of their work. Platoro is therefore entitled to only one-third of the salvage award to the joint venture.
 
 
 43
 B. The Nature of the Award.
 
 
 44
 We cannot find a case where the salvage award was expressed in terms of the res rather than in dollars, except where the salvage award was made alternatively with an award of title to the res under the law of finds. See Treasure Salvors, 569 F.2d at 337; Brady v. The Steamship African Queen, 179 F.Supp. 321, 324 (E.D.Va.1960). In this case, where Texas has a strong interest in keeping the res because of its historical significance to the State, it is particularly inequitable to compel its sale at this juncture.
 
 
 45
 It is also unfair simply to establish the salvage award as equal to the present value of the res, because Texas has expended a great deal of money cleaning, preserving, and cataloging the artifacts, thus presumably increasing their value. It is a general principle of property salvage law that the award should not exceed the value of the res as recovered. If the award exceeded that value, the owner would be not benefited but burdened by the service, a result contrary to the goals of salvage law. See Norris, supra, Secs. 1, 232. This is true even where the salvor's expenses exceed the value of the res; in that case, the salvor's actions have caused a net economic loss to society, also contrary to the result sought by salvage law. See id. Sec. 235. The maximum allowable total award in this case, then, would be the value of the res as it was recovered by Platoro and its co-salvors.[15]
 
 
 46
 On remand, the district court should establish a dollar value for the res as recovered, and use that in its consideration of the factors on which a salvage award is based.[16] The court should arrive at a dollar figure for the total value of the salvage services rendered, which should not exceed the value of the res. It must then determine what portion of the award should go to the joint venturers. Platoro will be entitled to a judgment for one-third of the award to the joint venturers, and to a lien against the res to secure payment of the judgment.
 
 
 47
 V. ATTORNEYS' FEES AND INTEREST.
 
 
 48
 Finally, Texas attacks the trial court's award of attorneys' fees and interest. Texas alleges that the court failed to consider the factors to evaluate in awarding attorneys' fees set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), and that the amount of the award is unsupported by the evidence. Texas also seeks clarification whether the attorneys' fees are to come from the salvage award or directly from the State. The State's final assertions are that the award of prejudgment interest at a rate of 9% was excessive, since Texas law would only permit a rate of 6%, and that interest should only be awarded from the date Platoro filed this suit, not from the date Texas received the res.
 
 
 49
 A. Attorneys' Fees.
 
 
 50
 The district court's entire discussion of attorneys' fees was four sentences long, and made no reference to the Johnson v. Georgia Highway Express standards.[17] Because of that, we would vacate the award and remand for specific findings on those factors even if the award were otherwise justifiable. We hold, however, that it is not.
 
 
 51
 Platoro concedes in its brief on appeal that the attorneys' fees should be charged against the "salvage fund." We have held, however, that Platoro is not entitled to the entire fund; we must therefore consider whether the attorneys' fees must come entirely out of Platoro's portion.
 
 
 52
 In Boeing Co. v. Van Gemert, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980), the Supreme Court faced a related question: whether attorneys' fees awarded in a class action suit could be assessed proportionately against the unclaimed portion of the fund. The Court recognized that a lawyer who recovers a common fund for the benefit of persons in addition to his client is entitled to receive his fees from the fund as a whole; this is "a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees." Id. at 478, 100 S.Ct. at 749 (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The basis for the exception is to spread the costs proportionately among those benefited by the suit. Id. The Court held that the requirements for the application of the common-fund doctrine were met by a class action, where "each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment ... [and] members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund." Id. at 479, 100 S.Ct. at 749-50. The Court noted the inequity of permitting claimants to benefit from the fund without bearing the costs of the litigation.
 
 
 53
 The Court stated that the use of the common-fund doctrine in the case before it was "consistent with the American rule against taxing the losing party with the victor's attorney's fees." Id. at 481, 100 S.Ct. at 750-51 (citing Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). This was because the district court had awarded the entire fund to the class, so that Boeing had no interest in the fund. All it had was the possibility of asserting a right to the refund of any money left unclaimed.
 
 
 54
 Boeing clearly differs from the case before us in vital respects. Platoro has not established a fund from which the nonsuing co-salvors can simply claim their shares; on the contrary, the co-salvors must receive their own waivers of Texas' eleventh amendment immunity before they can recover anything, and such waivers are wholly within the discretion of the Texas legislature. Further, Texas has an immediate right to the portion of the fund not awarded to Platoro. Thus in this case there is no basis for the application of the common-fund doctrine: there is no danger that the nonsuing co-salvors would be unjustly enriched, and application of the doctrine would effectively tax attorneys' fees against Texas. The entire award of attorneys' fees would therefore have to come out of Platoro's share of the fund.[18]
 
 
 55
 In admiralty cases, however, it is the general rule that attorneys' fees are not awarded. Noritake Co. v. M/V Hellenic Champion, 627 F.2d 724 (5th Cir.1980). Platoro cites Compania Galeana, S.A. v. M/V Carribean Mara, 565 F.2d 358 (5th Cir.1978), for the proposition that such an award lies in the discretion of the admiralty court. We pointed out in Noritake, however, that Compania Galeana clearly referred to an exception to the rule: that attorneys' fees may be awarded where the nonprevailing party has acted in bad faith. Noritake, 627 F.2d at 731 n. 5. Aside from the fact that there is no proof that Texas acted in bad faith, it makes no sense to apply the exception to a case such as this, where the attorneys' fees would come from the client's recovery rather than from the opposing party.[19] We therefore vacate the award of attorneys' fees and instruct the district court to allow Platoro and its counsel to settle the question between themselves.
 
 
 56
 B. Interest.
 
 
 57
 Finally, Texas disputes the award of prejudgment interest accruing at a rate of 9% rather than 6%, and from the time Platoro returned the res to Texas (1968 or 1969) rather than from the time Platoro filed this suit (1977). We do not find merit in the State's contentions.
 
 
 58
 Texas somewhat misconceives the trial court's action. The only mention of interest occurs in the court's discussion of the value of the time and labor expended by the salvors. The court found that value to be $140,000, "to which Platoro is entitled plus 9% prejudgment interest dating from the time Texas took the res." The value of time and labor, however, is only a factor in the award, not the award itself. Since the court never established a dollar amount for the award, it never explicitly calculated interest thereon. There was thus evidently no award of interest from which to appeal. We will nonetheless discuss the issue, for the district court will confront it on remand.
 
 
 59
 As a general rule, prejudgment interest is allowed in admiralty cases. It is not a penalty, but compensation for the use of funds wrongfully withheld. It may be denied only where peculiar circumstances make its granting inequitable. Noritake Co. v. M/V Hellenic Champion, 627 F.2d at 728-30; In re M/V Vulcan, 553 F.2d 489 (5th Cir.), cert. denied, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). On remand, the district court should determine whether such circumstances exist, and if they do not it should award prejudgment interest. The interest should be calculated on Platoro's share of the fund, not on the element of time and labor.[20]
 
 
 60
 Texas' argument that interest should accrue only from the date of filing suit disregards the purpose of the award. It is to compensate Platoro for the fact that Texas has had the use of the artifacts since 1968 or 1969, while Platoro has not had the use of the salvage award to which it was entitled. Noritake, 627 F.2d at 728. Any interest awarded should therefore accrue from the time at which Platoro became entitled to a salvage award, i.e., when the res was returned to Texas.[21] This is the usual rule: admiralty courts ordinarily award interest from the date of loss. In re M/V Vulcan, supra; Geotechnical Corp. v. Pure Oil Co., 214 F.2d 476 (5th Cir.1954).
 
 
 61
 Texas' final contention is that the rate of any prejudgment interest allowed should be limited to 6%, rather than the 9% rate used by the district court in its discussion. The premise of this argument is that the admiralty court is bound by the rate set by the law of the state in which it sits.
 
 
 62
 This premise is false. Admiralty courts have discretion in setting the rate of prejudgment interest. Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co., 651 F.2d 1096 (5th Cir.1981); In re M/V Vulcan, supra; Geotechnical Corp. v. Pure Oil Co., supra. They may be guided by state law, Gator Marine, supra; Geotechnical Corp., supra, but they are not bound by it. The court in M/V Vulcan, supra, for instance, looked to the injured party's cost of borrowing. 553 F.2d at 491. We cannot therefore instruct the district court to use any particular rate; the decision in the first instance must lie with the district court after it evaluates the circumstances of the case.
 
 
 63
 VI. SUMMARY.
 
 
 64
 We find that Texas has waived its eleventh amendment immunity and consented to this suit. We further find that there was marine peril, that Texas did not reject Platoro's services, and that Platoro did not embezzle the res so as to forfeit its right to a salvage award. We therefore affirm that portion of the district court's judgment which held that Platoro was entitled to a salvage award.
 
 
 65
 We vacate the district court's award of the res, however, and remand for a determination of a dollar amount, not to exceed the value of the res. We further instruct the district court to award Platoro one-third of the joint venture's share of that amount, and to grant prejudgment interest on Platoro's award from the time Texas took possession of the res, unless the district court finds that the circumstances of the case would make the grant of interest inequitable. The rate of interest is in the sound discretion of the district court. Finally, we vacate the award of attorneys' fees and instruct the district court not to grant them on remand.
 
 
 66
 Each party shall bear its own costs.
 
 
 67
 The judgment of the district court is AFFIRMED in part, VACATED in part, and REMANDED with instructions.
 
 
 
 [1]
 The precise scope of the waiver is a subject of controversy here. See part II, infra
 
 
 [2]
 There were two intervenors below, Jefferson T. Burke and Billy Russell Algoe. They were members of Platoro's crew who asserted individual salvage claims. The district court found that they had proved their claims, but no relief could be granted them because Texas' eleventh amendment waiver did not extend to them. They filed a notice of appeal, but the appeal was later dismissed on their own motion
 
 
 [3]
 The court below did not explicitly grant prejudgment interest, but Texas apparently read the opinion as doing so. See part V.B., infra, for a full discussion of the issue
 
 
 [4]
 It could be argued, although neither party has raised the question, that the eleventh amendment issue was decided by the Platoro II court and is thus the law of the case. The doctrine of the law of the case is not restricted to express rulings of the earlier court. Morrow v. Dillard, 580 F.2d 1284 (5th Cir.1978); Carpa, Inc. v. Ward Foods, Inc., 567 F.2d 1316 (5th Cir.1978); Terrell v. Household Goods Carriers' Bureau, 494 F.2d 16 (5th Cir.), cert. dismissed, 419 U.S. 987, 95 S.Ct. 246, 42 L.Ed.2d 260 (1974). Nevertheless, we decline to rely on the law of the case here, since the eleventh amendment issue was not contested before the Platoro II court and it is now of central importance to the case. Our decision is made easier by the fact that we reach the same result on the merits as we would were we to apply the law of the case: Texas has waived its eleventh amendment immunity
 
 
 [5]
 We note that none of Texas' textual implications would preclude a federal diversity suit. Platoro is an Indiana corporation and more than $10,000 is at stake, so that a diversity action would be at least theoretically possible, and in such a suit (which would be a civil action) service would be on the Texas Attorney General and the law of Texas would almost certainly apply. We are uncertain what Platoro could allege as a cause of action, however, since the salvage action is only available in admiralty. The only possibility would seem to be a quantum meruit claim
 Nevertheless, the point is that, even treating Texas' arguments as conclusive, they do not limit Platoro to state courts. We need not decide whether Texas may permit a diversity action while forbidding an admiralty one, however, since we find that the waiver also applies to admiralty cases.
 
 
 [6]
 Our analysis of the resolution includes no reference to its legislative history because our research has not located any
 
 
 [7]
 We express no opinion on the correctness of the issuance of the injunction. We simply point out that, since there had been an injunction which was not overturned on the merits, the Texas legislature must have realized that suit in state court might be held impermissible. This strengthens the inference that the legislature intended to permit a federal suit, since the legislature might well have thought that a limitation to state court would make the waiver meaningless
 
 
 [8]
 Texas alleges in its reply brief that Platoro has used the waiver of sovereign immunity to file suit in state court. This has no bearing on the situation at the time the legislature passed the resolution; the only state court action at that point had been the suit enjoined by the district court before Platoro I
 
 
 [9]
 Texas argues that the Fifth Circuit in Treasure Salvors required that the vessel still be in peril after its location was discovered, but we believe that is a misreading of the opinion. In any event, the Espiritu Santo was still in peril after its position was discovered. Texas' only argument to the contrary is that the vessel was effectively sealed under a thick layer of sand and thereby protected; we observe first, that this is information which would be available only in hindsight and thus should not be considered in evaluating Platoro's actions, and second, that it is far from clear that the sand would remain sufficient protection from the various perils of the Gulf of Mexico
 The Platoro II court also decided the issue of marine peril in Platoro's favor. We will not use the doctrine of the law of the case here, though, because the issue was raised in Platoro II by a motion to dismiss for failure to state a salvage claim. The Platoro II court did not specify the standards by which it decided the question, so we do not rely on its determination.
 
 
 [10]
 Texas does not argue that its state court suit under article 5421 to enjoin Platoro's excavation constituted a rejection. Indeed, it could not, since the services at issue were rendered before the injunction was issued
 
 
 [11]
 It is interesting to note that the Texas Antiquities Code, Tex.Nat.Res.Code Ann. Secs. 191.001-.174 (Vernon 1978 & Supp.1982), which was enacted in 1969 and thus does not apply to this case, makes extensive and pointed reference to sunken ships. See Sec. 191.002 (Texas public policy to preserve and protect "pre-twentieth century shipwrecks" and "sunken or abandoned ships and wrecks of the sea" and their contents); Secs. 191.053-. 056 (providing for contracts, permits, and compensation for salvage services and supervision thereof by the state); Sec. 191.091 (entitled "Ships, Wrecks of the Sea, and Treasure Imbedded in Earth" and designating "[s]unken or abandoned pre-twentieth century ships and wrecks of the sea" and their contents state archaeological landmarks); and Secs. 191.093, 191.095 (limiting conditions under which landmarks may be "salvaged"). The contrast to the statutes in force in 1967 could scarcely be greater
 
 
 [12]
 In a footnote, Texas argues that Platoro's attempt to appropriate the res should bar a salvage award. While embezzlement of the res can forfeit an award, the proof must be beyond a reasonable doubt. Norris, supra, Sec. 101. We cannot make such a finding here. Platoro took the property to Indiana under a good-faith belief of ownership. Belief that they own the vessel, however, may be insufficient to protect embezzling salvors. See Danner v. United States, 99 F.Supp. 880 (S.D.N.Y.1951); Norris, supra, Sec. 106. Nevertheless, the facts here do not justify a finding of embezzlement. The issue of ownership was genuinely in doubt, there was no destruction of the res, and Platoro voluntarily returned the res to Texas. The salvage suit is thus not barred
 
 
 [13]
 See note 16, infra, for the factors to be considered in making a salvage award
 
 
 [14]
 The fact that there is an eleventh amendment problem obviates any need for Texas to have raised this issue below. Ford Motor Co. v. Department of Treasury, 323 U.S. at 467, 65 S.Ct. at 352 (eleventh amendment issue sufficiently jurisdictional to be raised for first time on appeal). The Platoro II court did not deal with the question, which indeed could not then have arisen, since Platoro II dealt with pretrial motions. 614 F.2d at 1053. Our consideration of this issue is thus not foreclosed by the law of the case
 
 
 [15]
 The total award must include the contributions of all co-salvors. If the intervenors Burke and Algoe, or indeed anyone other than the joint venturers rendered compensable salvage services, their contributions must also be taken into account in determining the total award
 
 
 [16]
 The district court correctly set forth the relevant factors in its opinion:
 
 
 [1]
 the degree of danger from which the lives and property are rescued;
 
 
 [2]
 the value of the property saved;
 
 
 [3]
 the risk incurred by the salvors in securing the property from the impending peril;
 
 
 [4]
 the promptitude, skill and energy displayed by the salvors in rendering the service and saving the property;
 
 
 [5]
 the value of the property employed by the salvors in rendering the service and the danger to which such property was exposed; and
 
 
 [6]
 the time and labor expended by the salvors in rendering the salvage services
 Platoro, Ltd. v. Unidentified Remains of a Vessel, 518 F.Supp. 816, 821 (W.D.Tex.1981). They were originally delineated in The Blackwall, 77 U.S. (10 Wall.) 1, 14, 19 L.Ed. 870 (1869).
 
 
 [17]
 In Johnson, we instructed district courts to award attorneys' fees only after making findings on: (1) the time and labor required of the attorneys; (2) the novelty and difficulty of the case; (3) the skill required to perform the legal services properly; (4) the extent to which the attorneys' acceptance of the case precluded other employment opportunities; (5) the customary fee for similar legal work in the community; (6) whether the arrangement between the attorneys and the client was for a fixed or a contingent fee; (7) the time limitations imposed on the attorneys by the client or by circumstances; (8) the amount involved in the case and the result obtained by the attorneys; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case and the possible economic repercussions for attorneys who take an unpopular case; (11) the nature and length of the attorneys' professional relationship with the client; and (12) fee awards made in similar cases. 488 F.2d at 717-19. In the absence of such findings, we have no basis on which to review an award of attorneys' fees
 
 
 [18]
 We thus need not address the question whether an award of attorneys' fees against Texas would be barred by the eleventh amendment, and if so, whether the waiver extended to such an award
 
 
 [19]
 There is another exception to the rule against the award of attorneys' fees in admiralty cases: they may be allowed to an indemnitee in a suit against his indemnitor, as part of the reasonable expenses of defending against the claim. Noritake, 627 F.2d at 731-32 n. 5. This exception is clearly inapplicable to the case before us
 
 
 [20]
 Because prejudgment interest is as a rule granted in admiralty cases, Noritake, supra, we hold that the resolution of waiver, since it permitted an admiralty suit, necessarily consented to an award of prejudgment interest. Further, the policies of salvage law do not require that the salvage award plus interest thereon be less than the value of the res as recovered. The salvage award itself must be so limited to discourage economically inefficient acts of salvage. Interest, however, attempts to compensate the salvor for the delay between rendition of the service and compensation for it. Since it is merely compensatory, it does not provide additional incentive to salvage property not worth the cost of rescuing. On the other hand, restricting the salvage award plus interest to the value of the res would give the owner a reason to delay payment, at least where the salvage award alone would be near the value of the res, because during the delay the owner would in effect have free use of the money to which the salvor was entitled
 
 
 [21]
 We have no difficulty in finding that the resolution of waiver permits an award of interest antedating it. Interest from the date of loss is the usual admiralty rule. In re M/V Vulcan, 553 F.2d 489 (5th Cir.), cert. denied, 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). Texas consented to a suit in admiralty, and thus absent an express limitation in the waiver consented to the usual incidents of such a suit