**TRICO MARINE OPERATORS, INC., on its own behalf and on behalf of the masters and crews of the M/V MANATEE RIVER and M/V WOLF RIVER, et al.**

v.

**DOW CHEMICAL COMPANY and Security Pacific Leasing, Inc.**

Civ. A. Nos. 91–333, 91–2796.

United States District Court, E.D. Louisiana.

Dec. 2, 1992.

Michael H. Bagot, Jr., Wagner & Bagot, R. Christopher Martin, New Orleans, LA, for plaintiffs.

Alexander N. Breckinridge, IV, O'Neil Eichen, et al., Eugene W. Policastri, New Orleans, LA, Michael A. Orlando, Meyer, Orlando & Evans, Houston, TX, for defendants.

## ORDER AND REASONS

CLEMENT, District Judge.

Defendants' motion for partial summary judgment on the issue of averted liability was decided this date on memoranda. For the reasons stated below, defendants' motion is GRANTED, but the Court will hear evidence on the plaintiffs' skill and efforts in protecting the environment.

## I. BACKGROUND

On November 3, 1990, the M/V LISA C, owned by Childress Co., Inc., was engaged

---

in towing the barges DC 310, DC 373 and DC 371 through the Corpus Christi Ship Channel near Corpus Christi, Texas. The barges were chartered to defendant Dow Chemical Company and owned by defendant Security Pacific Equipment Leasing, Inc. Due to rough seas, the LISA C and the tow, which was loaded with benzene, broke up. The Coast Guard sent out a distress call to any vessels in the vicinity to assist in the recapture of the barges. Six vessels, including two owned by plaintiff Trico Marine Operators, Inc. and one owned by plaintiff Sea Mar Operators, Inc., responded to the call and rounded up the barges. Two other vessels attempted to render assistance, but were unsuccessful.

Plaintiffs contend that, in addition to rescuing the barges and their cargo, they prevented an environmental disaster. They contend their salvage operation prevented any benzene from escaping from the barges and causing damage to the environment. They seek an award for the averted liability that the defendants would have faced, including statutory liability under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, and the Oil Pollution Act (OPA), 33 U.S.C. § 2701 *et seq.*

Defendants have filed this motion for partial summary judgment, seeking a ruling that the plaintiffs cannot recover damages for averted liability. Defendants note that no American court has recognized the concept of liability salvage.

## II. SALVAGE LAW PRINCIPLES

### A. Traditional Salvage Award Criteria and the Environmental Incentive Problem

There is no precise formula for determining an appropriate salvage award, as each case must be evaluated according to its own circumstances. *Allseas Maritime,*

*S.A. v. M/V MIMOSA,* 812 F.2d 243, 245–46 (5th Cir.1987). American courts have traditionally applied the six criteria set out by the Supreme Court in *The Blackwall,* 77 U.S. (10 Wall.) 1 (1869), 19 L.Ed. 870:

(a) the degree of danger from which the salvaged property was saved—

(b) the salvaged property's value—

(c) the risk incurred by the salvors

(d) the salvors' promptitude, skill and energy

(e) the value of the salvors' property put at risk

(f) the salvors' time and labor

*Allseas Maritime,* 812 F.2d at 245–46, *citing The Blackwall,* 77 U.S. at 14. Because the award is based on the salvor's rescue of property belonging to the shipowner, the award is limited to "the value of the property saved after all of the appropriate factors are taken into account including risk to the salvor." *Id.* at 246. This "ceiling" is commonly referred to as "the *Blackwall* principle."

Commentators have noted that an award based on the above criteria, and limited by the *Blackwall* principle, might not provide an adequate incentive for potential salvors to undertake salvage operations to protect the environment. *See* Binney, "Protecting the Environment with Salvage Law: Risks, Rewards, and the 1989 Salvage Convention," 65 Wash.L.Rev. 639, 65 WALR (WESTLAW) at 5–6. Possible remedies to this problem are to (1) recognize liability salvage [1], and/or (2) add an additional criterion to the *Blackwall* list (environmental protection).[2] To effectuate either of these policies, it may also be necessary to (1) discard the *Blackwall* principle, or (2) allow a limited exception to the *Blackwall* principle where the salvor rescues property of little value but prevents significant environmental damage or other liability. These options are discussed below.

---

**1.** At least one commentator has expressed support for liability salvage. Note, *Calculating and Allocating Salvage Liability,* 99 Harv.L.Rev. 1896, 1904 (1986).

**2.** Another commentator contends that liability salvage would create too many problems of

proof, but advocates that environmental concerns be taken into account in determining salvage awards, as outlined in the 1989 Convention on Salvage. Binney, 65 WALR (WESTLAW) at 6–8. The 1989 Convention is discussed below.

## B. *Allseas Maritime* and Liability Salvage

In *Allseas Maritime*, The Fifth Circuit addressed the issue of recovery for averted liability. The Court recognized that "traditional salvage law does not reward a salvor for saving the shipowner from liability for damages to other ships, oil rigs, or other nearby property." *Id.* at 247. In dicta, however, the Court noted that there was "considerable merit" to the "position that salvors should be compensated for liability avoided." *Id.* at 247. The court declined to consider an award for averted liability because of the Limitation of Liability Act, 46 U.S.C.App. §§ 183–88, which ordinarily permits shipowners to limit their liability to the value of their vessel(s) and cargo:

> Thus, even though the MIMOSA might have caused millions of dollars of damage to nearby oil rigs, its owner could not have been required to pay more than the salvage value of the MIMOSA. Had the MIMOSA not been salved, but crashed into a rig, the owner would still have lost only the value of the MIMOSA, and that averted loss is already considered in the salvage award calculation.

*Id.* The Court went on to criticize the "anachronistic survival of the Limitation of Liability Act." *Id.*

In a petition for rehearing, the plaintiff called the court's attention to a report by a maritime board indicating that the crew of the salved vessel acted negligently. The court held that it was too late (at the appellate level) for the plaintiff to present evidence that the shipowner was not entitled to limit its liability:

> the issue of the MIMOSA'S negligence was not pressed below and was therefore not adequately developed. We cannot try this issue on appeal.

*Juniper Shipping, Ltd. v. Vizier Offshore Towing, Inc.*, 820 F.2d 129, 130 (5th Cir. 1987). In denying the petition for rehearing, the court made it clear that the reason for not considering averted liability was the Limitation of Liability Act:

> We denied an allowance based on [averted liability] because the owner could limit its liability to the value of the MIMOSA and the salvage award had already accounted for the saving of that value. While the TAROZE VIZIER challenged the owner's ability to limit liability, we found no evidence in the record of negligence by the MIMOSA that would prevent it from limiting liability.

*Id.* Thus, if not for the shipowner's right to limit liability, the Fifth Circuit presumably would have required the district court to consider averted liability.[3]

## C. Other Recent Decisions

The Court is aware of two other recent decisions discussing the possibility of liability salvage. Both courts denied the salvor a recovery based on averted liability. *Hendricks v. Tug Gordon Gill*, 737 F.Supp. 1099, 1104 (D.Alaska 1989); *Westar Marine Serv. v. Heerema Marine Contractors*, 621 F.Supp. 1135, 1140–41 (D.C.Cal. 1985). Both cases involved foreign parties, and, thus, were governed by the Brussels Convention of 1910, which did not allow for a recovery based on averted liability.

## D. The 1989 Convention on Salvage

The 1989 Convention on Salvage seeks to replace the Brussels Convention of 1910. The 1989 Convention has been ratified by the U.S. Senate, but has not taken effect yet because it has not yet been ratified by the required number (15) of nations.[4]

Although the 1989 Convention is not in force, it represents an important statement of salvage law by the world's maritime nations which has been signed by the President and ratified by the Senate. Both sides in this litigation have cited the 1989 Con-

---

**3.** It is not clear why the *Allseas Maritime* court did not consider awarding compensation for averted liability *up to* the value of the property saved.

**4.** Once in force, it would appear that the 1989 Convention would apply to the case at bar.

Unlike the 1910 Convention, it does not contain a provision precluding its application to purely domestic disputes. *See* 1989 Convention, Article 2; Gaskell, "The 1989 Salvage Convention and the Lloyd's Open Form (LOF) Salvage Agreement 1990," 16 Tul.Mar.L.J. 1, 23 (1991).

vention in support of their positions on liability salvage.

Article 13 of the Convention provides that one of the factors to consider in determining the salvage award is "the skill and efforts of the salvors in preventing or minimizing damage to the environment" (the other factors listed in Article 13 are similar to the *Blackwall* list). However, the award cannot exceed the value of the salved vessel and cargo. Thus, "the Convention incorporates the *Blackwall* principle, but adds a new factor"—environmental protection. Pell, "International Convention on Salvage," S.Exec.Rep. No. 102–17, 102nd Cong., 1st Sess. (1991).

Article 14 of the Convention provides that a salvor who prevents environmental damage may recover "special compensation" in the amount of up to 200% of his expenses where that amount would exceed the amount of a conventional salvage award under Article 13. Thus, a salvor who has salved a vessel of little value, but has prevented environmental damage, may recover in excess of the value of the property saved.

The 1989 Convention contains no mention of the concept of liability salvage, as the concept was rejected in the negotiations leading up to the Convention. *See* Gaskell, 16 Tul.Mar.L.J. at 7 n. 16 (1991).

#### E. Lloyd's Open Form

Lloyd's of London's Open Form Salvage Agreement (LOF), a standard salvage contract form, represents another important authority on salvage awards. Recent revisions to the form reflect a growing international consensus that salvage awards should encourage environmental protection. Gaskell, 16 Tul.Mar.L.J. at 10–11.

The 1980 revision required salvors to use their "best endeavors" to prevent oil escaping from a vessel. It also provided the first exception to the no cure-no pay rule: if a salved vessel is a tanker laden with oil, owners must pay the salvor's expenses plus up to fifteen percent, even if the ves-

sel and cargo are lost. LOF 1980, Clause 1(a). The 1990 revision incorporates Articles 13 and 14 of the 1989 Convention, giving them contractual effect. LOF 1990, Clause 2. Neither revision recognizes liability salvage.

### III. ANALYSIS

As noted above, the *Allseas Maritime* court rejected liability salvage because it was inconsistent with the Limitation of Liability Act. The defendants in this case have instituted a separate limitation proceeding in Corpus Christi. Thus, if defendants prevail in their petition for limitation, their common law tort liability will be limited to the value of their vessels and cargo.

Plaintiffs point out that defendants' liability could have exceeded the value of their vessels and cargo under CERCLA, which provides for environmental liability notwithstanding the Limitation of Liability Act. 42 U.S.C. § 9607(h).[5] Consequently, the Limitation of Liability Act does not necessarily preclude an award based on averted liability in this case.

■ Although the Court is not constrained by the Limitation of Liability Act, as the *Allseas Maritime* court was, the Court does not adopt a rule of compensation for averted liability. In light of the rejection of liability salvage in the 1989 Convention and LOF 1990, the Court declines to follow the *Allseas Maritime* dicta suggesting that salvors should be compensated for liability avoided, and instead will apply the rule set forth in those documents. Thus, the Court will add an additional factor to the *Blackwall* list—"skill and efforts of the salvors in preventing or minimizing damage to the environment."

Adding this factor (1) will require the Court to hear evidence detailing the plaintiffs' skill and efforts in protecting the environment and (2) may result in an enhanced award, as if the Court had recognized the concept of liability salvage. The difference is that the Court will not need to

---

**5.** Plaintiffs also rely on the Oil Pollution Act (OPA), which has no application here because the barges were carrying benzene, not oil.

make an inherently speculative determination of the defendants' averted liability, but instead will consider the plaintiffs' skill and efforts in protecting the environment as a seventh subjective factor in calculating the appropriate award.

The Court need not consider whether to (1) discard the *Blackwall* ceiling, or (2) adopt a rule of "special compensation" such as that described in Article 14 of the 1989 Convention, because the value of the vessels and cargo in this case is more than sufficient to compensate the salvors for their efforts. However, there is considerable merit to the position that an exception to the *Blackwall* ceiling should be made where the value of the property saved is inadequate to compensate the salvors for their efforts in protecting the environment.

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that defendants' motion for partial summary judgment on averted liability is GRANTED.